IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROY R. CAMPOS,<br><br>    Petitioner,<br><br>v.<br><br>GEORGE NEOTTI, Acting Warden,<br><br>    Respondent. | No. C 02-5475 CRB (PR)<br><br>**ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS** |

Petitioner, a state prisoner currently incarcerated at the R. J. Donovan Correctional Facility in San Diego, California, seeks a writ of habeas corpus under U.S.C. § 2254, challenging a conviction and sentence from the Santa Clara County Superior Court. Petitioner claims that: (1) the jury was erroneously instructed, (2) he was improperly denied a request for a continuance, (3) his sentence constituted cruel and unusual punishment, and (4) he received ineffective assistance of counsel on appeal. For the reasons set forth below, a writ is DENIED.

## STATEMENT OF THE CASE

Petitioner, who represented himself, was convicted by a jury in Santa Clara County Superior Court on August 25, 1999 of one count of Commercial Burglary, Cal. Penal Code § 459, and one count of Petty Theft With A Prior, id. §§ 484/666. In a bifurcated proceeding, Petitioner was sentenced under California's Three Strikes law to term of 26 years to life in state prison.

On December 4, 2000, Petitioner appealed his conviction to the California Court of Appeal, claiming only that the jury was improperly instructed pursuant to CALJIC 17.41.1. On August 28, 2001, the Court of Appeal affirmed the judgment of the trial court in its entirety and, on November 14, 2001, the California Supreme Court denied review.

On November 19, 2002**,** petitioner filed the instant petition for a writ of habeas corpus under 28 U.S.C. § 2254, challenging his conviction exclusively on the CALJIC 17.41.1 improper jury instruction claim. He also requested a "stay and abeyance" of his petition so he could return to state court to exhaust additional claims. Petitioner's request was granted on February 20, 2003, and the petition was stayed. Petitioner was instructed to move to reopen the case once his claims were exhausted in the state courts.

On March 6, 3003, Petitioner filed a petition for writ of habeas corpus in the California Supreme Court. He alleged that he was improperly denied a request for a continuance, that he received ineffective assistance of counsel on appeal, that his Three Strikes sentence constituted cruel and unusual punishment, and that he was convicted with insufficient evidence. The petition was denied on October 15, 2003.

On December 16, 2003, after several inquiries from Petitioner, the Court ordered him to file a motion to re-open the case and submit a proposed amended habeas petition including his newly-exhausted claims. On February 24, 2004, the Court granted Petitioner's motion for an extension of time and, on May 5, 2004, issued an order giving Petitioner a "final opportunity" to file a motion to re-open the case and submit a proposed amended habeas petition by June 1, 2004.

Petitioner did not file a motion to re-open the case and proposed amended petition until October 21, 2008. On January 16, 2009, the motion was granted and respondent was ordered to show cause why a writ of habeas corpus should not be granted. Respondent filed an answer. Petitioner did not file a traverse.

/

/

/

2

**STATEMENT OF THE FACTS**

The California Court of Appeal summarized the facts of the case as follows:

> At approximately 10:30 p.m. on December 20, 1998, defendant threw a "river rock" through the plate glass front window of "Denim Depot" on South First Street in Campbell. He entered the store through the hole he had created and removed five leather jackets. A neighbor, who heard the glass break and thereafter saw defendant run past his home carrying something bulky, called 911 and gave a description of the suspect which focused upon his plaid shirt and "dark-colored" baseball cap. Police detained defendant a few blocks away. He was the only person in the area and was wearing clothing and a baseball cap which matched the earlier description. The stolen jackets were recovered from a nearby trash can. At the time of his arrest, defendant had a fresh gaping wound on his right forearm, and forensic experts later matched glass found in his shoe soles to that from the store's broken window.

Resp't Ex. 4 at 1-2.

**DISCUSSION**

A.   Standard of Review

A federal writ of habeas corpus may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13 (2000). "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies that correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413.

"[A] federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established

3

federal law erroneously or incorrectly. Rather, that application must also be unreasonable. Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

The only definitive source of clearly established federal law under 28 U.S.C § 2254(d) is in the holdings (as opposed to the dicta) of the Supreme Court as of the time of the state court decision. Williams v. Taylor, 529 U.S. at 412; Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir. 2003). While circuit law may be "persuasive authority" for purposes of determining whether a state court decision is an unreasonable application of Supreme Court precedent, only the Supreme Court's holdings are binding on the state courts and only those holdings need be "reasonably" applied. Id.

B.   Claims & Analysis

Petitioner seeks federal habeas relief under § 2254 on the basis of four claims: (1) erroneous jury instruction; (2) improper denial of a continuance before trial; (3) unconstitutional sentence, and (4) ineffective assistance of appellate counsel. The first claim was raised in Petitioner's original petition, but the other three are raised for the first time in his proposed first amended petition submitted on October 21, 2008.

1.   Petitioner's Claim in Original Petition: Erroneous Jury Instruction

Petitioner claims that instructing the jury pursuant to CALJIC No. 17.41.1 violated his federal constitutional right to a verdict agreed upon by twelve independent jurors. According to petitioner, the instruction was improper because it "chills free speech and discourse of the jury; has a coercive effect on jurors holding opinions contrary to the majority" and precludes jurors from engaging in nullification. First Am. Pet. at 6. Petitioner argues that the instruction constituted "structural error." Id.

Unfortunately for Petitioner, the Ninth Circuit has held that CALJIC 17.41.1 is not contrary to, or an unreasonable application of, any existing Supreme Court precedent. See Brewer v. Hall, 378 F.3d 952, 955-956 (9th Cir. 2004) (rejecting challenge to CALJIC 17.41.1 under 28 U.S.C. § 2254(d)). Petitioner is not entitled to federal habeas relief on his

4

instructional error claim.

2.      Petitioner's Claims in Proposed Amended Petition: Timeliness

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) provides that "a 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court." 28 U.S.C. § 2244(d)(1). Petitioner's original petition filed on November 19, 2002 was filed well within the one-year limitation period, but his three newly-exhausted claims in the proposed amended petition submitted on October 12, 2008 are untimely unless they relate back to the claim in the original petition. See King v. Ryan, 564 F.3d 1133, 1142-43 (9th Cir. 2009).

Amendments made after AEDPA's one-year statute of limitations has run relate back to the date of the original pleading if the original and amended pleadings "'ar[i]se out of the conduct, transaction, or occurrence.'" Mayle v. Felix, 545 U.S. 644, 655 (2005) (quoting Fed. R. Civ. P. 15(c)(2)). "An amended habeas petition . . . does not relate back (and thereby escape AEDPA's one-year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." Id. at 650 (finding that new coerced confession claim did not relate back to the original petition that raised only a factually distinct Confrontation Clause claim). Mayle explicitly rejected the proposition that the "same 'conduct, transaction, or occurrence' [means the] same "trial, conviction, or sentence." Id. at 664. Instead, relation back will only be in order if the original and amended petition state claims are tied to a common core of operative facts. Id. at 664-65.

Petitioner's three newly-exhausted claims of improper denial of a continuance before trial, unconstitutional sentence and ineffective assistance of appellate counsel are untimely because they were filed over five years past the AEDPA deadline and do not relate back to the original habeas petition. The fact that Petitioner's claims all concern his 2000 conviction is not enough; the newly-exhausted claims do not relate back because they and the instruction error claim in the original habeas petition are not tied to a common core of operative facts. See id. Petitioner is not entitled his newly-exhausted, but untimely, claims

5

in an amended petition. See Hebner v. McGrath, 543 F.3d 1133, 1138-39 (9th Cir. 2008) (holding district court did not err by denying petitioner leave to amend petition to add new claim that would be untimely where new claim arose from different core of operative facts than claims in original petition and thus did not relate back to original petition).

3.  Petitioner's Claims in Proposed Amended Petition: Merits

Even if Petitioner's three newly-exhausted claims were not time-barred, they would be rejected for lack of merit.

a.  Denial of Trial Continuance

Petitioner claims that the trial court violated his due process right to a fair trial when it denied his requests for a continuance. First Am. Pet. at 6. After being granted *pro per* status on June 14, 1999 pursuant to a motion under Faretta v. California, 422 U.S. 805 (1975), Petitioner claims he was denied reasonable requests for a continuance on June 15 and June 16, 1009. Id. Because he was allegedly "still in the midst of discovery when he requested the continuances," he claims he was forced to "proceed to trial in a rush and without the necessary preparations needed" when the continuances were denied. Id.

According to the record, Petitioner's case unfolded as follows: The District Attorney filed the information against petitioner on April 16, 1999. Resp't Ex.1 at 61. On June 7, 1999 Petitioner requested a Marsden hearing for substitution of counsel, prompting new counsel to be appointed to represent Petitioner. Resp't Ex. 1 at 73, Ex. 10 at 5, Ex. 11 at 41; see People v. Marsden, 2 Cal.3d 694 (1970). Then on June 14, 1999, after new counsel had been appointed, Petitioner requested to proceed in *pro per*. Resp't Ex. 1 at 75; Ex. 10 at 1-16. Petitioner was thoroughly questioned about his understanding of this course of action, as well as the alternative of conducting a Marsden hearing to appoint still another attorney to represent Petitioner:

> THE COURT: Do you understand that at this point if you do request a Marsden hearing and the court found good cause for your request to remove the public defender, then the court would appoint alternate counsel for you if it was determined that you could not afford an attorney, which I assume would be the case given the fact that they represent you now. So do you understand that?

6

> DEFENDANT CAMPOS: Yeah.
>
> THE COURT: Okay. And at this time you are not requesting a <u>Marsden</u> hearing and asking that the court consider appointing other counsel for you?
>
> DEFENDANT CAMPOS: No, ma'am. No, your honor.
>
> THE COURT: But you understand that you have that right?
>
> DEFENDANT CAMPOS: Yes, ma'am. Yes, your honor.
>
> THE COURT: So at this time your sole request is that court permit to you proceed and represent yourself; is that right?
>
> DEFENDANT CAMPOS: Yes, your honor.

Resp't Ex. 10 at 7.

After this exchange, the Deputy District Attorney emphasized that time was not waived, and the court impressed the implications of this fact on Petitioner:

> THE COURT: The District attorney is indicating that the matter has been sent for trial. You have not waived time. The matter is ready to proceed to trial.
>
> DEFENDANT CAMPOS: I am ready.
>
> THE COURT: Witnesses are called, and so the - - which means that there are not available to you certain pre-trial motions that otherwise would be.
>
> DEFENDANT CAMPOS: The public defenders - -
>
> THE COURT: The case is ready to go to jury trial at this time. [Your current attorney] has indicated there is a trial binder that the public defender has prepared that would be available to you for your review, but the issue at this point is are you ready to proceed to trial?
>
> DEFENDANT CAMPOS: I am ready, ma'am - - I mean, your honor.
>
> THE COURT: Jury trial?
>
> DEFENDANT CAMPOS: Yes, ma'am.
>
> THE COURT: You understand at this point that certain pre-trial motions are no longer available to you once we proceed?
>
> DEFENDANT CAMPOS: They already did that for me. They already exhausted that for me.
>
> THE COURT: Once we proceed to jury trial.
>
> DEFENDANT CAMPOS: Yes, ma'am.

7

> THE COURT: So you are ready to go to jury trial?
>
> DEFENDANT CAMPOS: I am ready, your honor.

Resp't Ex. 10 at 13-14.

On June 15, 1999, Petitioner acted in *pro per* through various pretrial matters in the morning, but also expressed that he had been confused the day before and needed a continuance before trial. Resp't Ex. 11 at 19. The court discussed the matter with Petitioner:

> COURT: I went over that with you yesterday, and at this point, we are going forward. Essentially, the choice was the matter had been set for trial. You either needed to go forward with your attorney, who was prepared, or you indicated that you were going to represent yourself and you were ready. So I am prepared to go forward on that. To the extent that they gave you additional papers, you have had all yesterday to go over those papers, and you are going to have four days - - at least four days to go over them before we get into most of the case here.
>
> DEFENDANT CAMPOS: Okay, your honor. I accept your answer, but also yesterday - -
>
> COURT: There is no alternative. At this point were - - there had been alternatives proposed and you made your choice.

Resp't Ex. 11 at 20.

Immediately after court reconvened in the afternoon after a recess, Petitioner renewed his request for a continuance and also asked for court appointed representation. Resp't Ex. 11 at 31. The court gave Petitioner two options: "You represent yourself, or I will call the public defender back. You can take your pick at this point." Resp't Ex. 11 at 33. When Petitioner continued to protest, the court stated "sit down and be quiet. I went over everything in detail with you yesterday. You absolutely were going to represent yourself. That was it. And I am not here to play games." Id.

When the court again reconvened on June 16, 1999, Petitioner requested that the public defender be reappointed. The request was granted, the public defender waived time, and Petitioner was granted a two month continuance. Id. at 40-48.

8

Yet when the case came before a different judge for trial on August 17, 1999, Petitioner again requested a Marsden hearing to discharge the public defender. Resp't Ex. 12 at 51-74. The request was denied and Petitioner responded by saying:

> THE DEFENDANT: No, sir. I refuse to accept this guy. I dismiss him immediately.
>
> THE COURT: Well, the Court has already made a ruling on the Marsden.
>
> THE DEFENDANT: Continuing against my will. Whatever you want to do.
>
> THE COURT: It is my choice you continue with [your current attorney] as your counsel.
>
> THE DEFENDANT: I refuse.
>
> THE COURT: Well, you can refuse to continue, but he will be your attorney. You can represent yourself - -
>
> THE DEFENDANT: I ask to be removed from the courtroom, please.
>
> THE COURT: I'm sorry?
>
> THE DEFENDANT: I refuse to accept this guy and I ask to be removed from this courtroom.
>
> THE COURT: Denied. You are going to proceed to trial with [your attorney].
>
> THE DEFENDANT: Against my will.
>
> THE COURT: Or without [your attorney]. You figure it out. What is it you want to do?
>
> THE DEFENDANT: I refuse to accept him as my lawyer.
>
> THE COURT: And do you want to represent yourself?
>
> THE DEFENDANT: I might as well, yeah.
>
> THE COURT: You want to discharge your attorney and you want to represent yourself?
>
> THE DEFENDANT: Yes, sir.

Resp't Ex. 12 at 75. The court then proceeded to conduct a Faretta hearing and again granted Petitioner's request for self-representation. Id. at 75-100.

9

It is well-established that the decision to grant or deny a requested continuance lies within the broad discretion of the trial court, Ungar v. Sarafite, 376 U.S. 575, 589 (1964), and that the improper denial of a requested continuance warrants habeas relief only if there is a showing of actual prejudice to petitioner's defense resulting from the trial court's refusal to grant a continuance, Gallego v. McDaniel, 124 F.3d 1065, 1072 (9th Cir. 1997).

Here, it cannot be said that the trial court abused its discretion in denying Petitioner's requests for a continuance. Although Petitioner claims he was denied a continuance on both June 15 and June 16, 1999, the record demonstrates that he was ultimately *granted* a two-month continuance on June 16 when the public defender was reappointed. Resp't Ex. 11 at 40-48. The court initially denied the continuance request on June 15 because Petitioner had been emphatic that he was prepared for trial when questioned the previous day, even when the judge exhaustively explained the implications of proceeding *pro per*. Resp't Ex. 11 at 19-22.

Nor can it be said that Petitioner was prejudiced from the denial of a continuance on June 15, 1999, as his request was granted the following day (June 16, 1999), and he received an additional two full months to review the necessary paperwork and prepare himself for trial. See Gallego, 124 F.3d at 1072.

It simply cannot be said that the California Supreme Court's rejection of Petitioner's claim was contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent, or was based on an unreasonable determination of the facts. See 28 U.S.C. § 2254(d). Petitioner is not entitled to federal habeas relief on his claim of improper denial of a trial continuance.

    b.  Unconstitutional Sentence

Petitioner claims that "the application of the Three Strikes Law to this case is unconstitutional because the sentence is disproportionate to the gravity of the offense. First Am. Pet. at 6. The claim is without merit.

Petitioner was sentenced pursuant to California's Three Strikes Law, which is triggered when a defendant is convicted of a felony, and he has suffered one or more prior

"serious" or "violent" felony convictions. See Cal. Penal Code § 667(e)(2)(A). Under California's Three Strikes Law, any felony conviction can constitute the third strike and subject a defendant to a term of 25 years to life in prison. Lockyer v. Andrade, 538 U.S. 63, 67 (2003). Petitioner's triggering offense was one count of Commercial Burglary, a felony, along with one count of Petty Theft With A Prior, also a felony. The trial court found that petitioner was not eligible for probation and imposed two state prison terms of 25 years to life for each of the felonies, staying one of the terms under § 654. The court also imposed an additional one year sentence pursuant to § 667.5(b) for Petitioner's prior prison terms. Resp't Ex. 1 at 251-55; Ex. 14 at 535-36.

Petitioner's priors involved crimes of violence and his criminal history is quite lengthy. Before his conviction for commercial burglary, he had committed five strike priors, one prison prior, and had violated parole six times within an eleven year period. Resp't Ex. 1 at 227-51. In addition to sixteen misdemeanors, petitioner had been convicted of eight felonies, including Assault With Great Bodily Injury, Petty Theft With Specified Priors, Second Degree Burglary, Escape From Jail, two counts of Kidnapping and two counts of Robbery. Id. at 230. Petitioner's first strike prior occurred in 1993, when Petitioner, who was under the influence of PCP, severely beat his father when he attempted to break up a fight between Petitioner and Petitioner's girlfriend. Petitioner's other strike priors stem from an incident in which Petitioner and a another individual forced two victims into the back of the victim's car with a 12 inch kitchen knife, driving them to a remote location and forcing them to lie face down in the vehicle before stealing the car's tires and wheels. Id.

"The Eighth Amendment does not require strict proportionality between crime and sentence. Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime." Ewing v. California, 538 U.S. 11, 23 (2003) (citations omitted). The Supreme Court has emphasized that "the only relevant clearly established law amenable to the 'contrary to' or 'unreasonable application of' framework [in 28 U.S.C. § 2254(d)(1)] is the gross disproportionality principle," which is applicable only in "exceedingly rare" and "extreme" cases. Lockyer, 538 U.S. at 73. In determining whether a sentence is grossly

11

disproportionate under a recidivist sentencing statute such as California's Three Strikes law, the court looks to whether such an "extreme sentence is justified by the gravity of [an individual's] most recent offense and criminal history." Ramirez v. Castro, 365 F.3d 755, 768 (9th Cir. 2004). Compare id. (holding sentence of twenty five years to life on petty theft with prior conviction was grossly disproportionate to crime where previous two strikes did not involve violence and where both strikes were the result of one negotiated plea resulting in a one-year county jail sentence) with Rios v. Garcia, 390 F.3d 1082, 1086 (9th Cir. 2004) (holding sentence of twenty-five years to life not grossly disproportionate for conviction of petty theft with a prior where defendant struggled with guard to prevent apprehension and prior convictions of robbery involved threat of violence "because his cohort used a knife").

Based on Petitioner's history of criminal recidivism, which includes multiple crimes of violence, his sentence cannot be said to be grossly disproportionate in violation of the Eighth Amendment. See Rios, 390 F.3d at 1086. The California Supreme Court's rejection of Petitioner's Eighth Amendment claim was not contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent; nor did it involve an objectively unreasonable determination of the facts. See 28 U.S.C. § 2254(d). Petitioner is not entitled to federal habeas relief on this claim.

### c. Ineffective Assistance of Appellate Counsel

Petitioner claims that his appellate counsel was ineffective in her representation of Petitioner on direct appeal because appellate counsel failed to raise either the improper denial of a continuance before trial claim or the unconstitutional sentence claim outlined above. First Am. Pet.at 6-6(I). In support of this claim, Petitioner submits a declaration from appellate counsel, in which she states that although Petitioner asked her to brief the claims and "I was aware of these issues, I did not include any of them in the breifs [sic] that I filed." First Am. Pet.at 6, Ex. A (Declaration of Marylou Hillberg).

The Due Process Clause of the Fourteenth Amendment guarantees a criminal defendant the effective assistance of counsel on his first appeal as of right. See Evitts v. Lucey, 469 U.S. 387, 391-405 (1985). Claims of ineffective assistance of appellate counsel

are reviewed according to the standard set out in Strickland v. Washington, 466 U.S. 668 (1984). Miller v. Keeney, 882 F.2d 1428, 1433 (9th Cir. 1989). A petitioner for habeas relief therefore must show that counsel's advice fell below an objective standard of reasonableness and that there is a reasonable probability that, but for counsel's unprofessional errors, he would have prevailed on appeal. Id. at 1434 & n.9.

It is important to note that appellate counsel does not have a constitutional duty to raise every nonfrivolous issue requested by defendant. See Jones v. Barnes, 463 U.S. 745, 751-54 (1983). The weeding out of weaker issues is widely recognized as one of the hallmarks of effective appellate advocacy. See Miller, 882 F.2d at 1434. Appellate counsel therefore will frequently remain above an objective standard of competence and have caused his client no prejudice for the same reason--because he declined to raise a weak issue. Id.

Petitioner's appellate counsel's choice on direct appeal not to include the claims for improper denial of a continuance before trial or unconstitutional sentence did not fall below an objective standard of reasonableness. As discussed above, both claims are without merit. It simply cannot be said that thee is a reasonable probability that, had counsel raised these claims, Petitioner would have prevailed on appeal. See id. at 1434 & n.9. It follows that the California Supreme Court's denial of Petitioner's ineffective assistance of counsel claim was not an objectively unreasonable application of Strickland. See 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 409 (2000). Petitioner is not entitled to federal habeas relief on this claim.

## CONCLUSION

For the foregoing reasons, the Court is satisfied that the petition for a writ of habeas corpus must be DENIED.

The clerk shall enter judgment in favor of respondent and close the file.

**IT IS SO ORDERED.**

Dated:   Oct. 19, 2009                                                   
                                                           CHARLES R. BREYER
                                                           United States District Judge